**WERTHEIMER CONSTRUCTION CORPORATION**

v.

**The UNITED STATES.**

No. 380–62.

United States Court of Claims.

Feb. 14, 1969.

Walter M. King, Jr., Washington, D. C., attorney of record, for plaintiff.

Edward Weintraub, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Richard Arens with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on August 12, 1968. Plaintiff filed a notice of intention to except to the commissioner's report on September 10, 1968. However, on December 13, 1968, plaintiff filed a motion for permission to withdraw its notice of intention to except and further moved that the court adopt the commissioner's report as its findings of fact and opinion. On December 17, 1968, defendant filed a motion agreeing and concurring in plaintiff's request that the commissioner's report be adopted by the court.

Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby grants the aforementioned motions of the parties, and adopts the said opinion, findings and recommended conclusion of law as the basis for its judgment in this case without oral argument. Therefore, plaintiff is en-

titled to recover and judgment is entered for plaintiff in the sum of $4,540.

## OPINION OF COMMISSIONER

ARENS, Commissioner:

Plaintiff, a general construction contractor, seeks remission of liquidated damages assessed against it and costs which it incurred after substantial completion of a 183 dwelling unit project which it constructed in Washington, D. C., under a contract entered into in April 1958, with the National Capital Housing Authority (sometimes hereinafter referred to as the Authority).

No administrative appeal from any decision of the contracting officer was provided for in the contract. The parties accordingly proceeded in this court by trial de novo. Under the circumstances of this case, the decision of the contracting officer is not entitled to Wunderlich Act finality and the resolution of the factual issues is to be made on the basis of a preponderance of the evidence before the court. L. Rosenman Corp. v. United States, 390 F.2d 711, 182 Ct.Cl. 586 (1968); Earl N. Davis, Trustee of Astrotherm Corp. v. United States, 180 Ct.Cl. 20 (1967). The factual issues, which constitute the bulk of the controversy, are set forth in detail and resolved by ultimate findings in the accompanying findings of fact, and are, therefore, only outlined in this opinion.

The work to be performed under the contract was divided into two groups which were to be "progressively completed, suitable and ready for occupancy" within the prescribed number of consecutive calendar days, and plaintiff was liable for liquidated damages for each calendar day of delay until the work was completed or accepted. Plaintiff was not to be charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond its control and without its fault or negligence, including "unusually severe weather." The contract contained a disputes clause and other provisions,

hereinafter alluded to in connection with relevant subject matter.

### LIQUIDATED DAMAGES

*Paving of Sayles Place* (finding 5). The contracting officer granted plaintiff 130 days' extension of contract time for completion of group 1 buildings due to delay caused by a paving contractor, but granted no extension of contract time for completion of group 2 buildings. The testimony of both plaintiff's and defendant's witnesses establishes, however, that the delay of the work on group 1 buildings interfered with the planned sequence of the operations with a resultant delaying effect on the work on group 2 buildings. Plaintiff claims that it should have been granted 70 days' extension of contract time for completion of group 2 buildings, but, as set forth in finding 5(f), 15 days' extension is found to be warranted. Adams v. United States, 358 F.2d 986, 175 Ct.Cl. 288 (1966); Blount Bros. Constr. Co. v. United States, 180 Ct.Cl. 35 (1967).

*Weather delays* (finding 6). Plaintiff requested the contracting officer for an extension of contract time of 128 days because of "extreme weather conditions," but the contracting officer, after comparing the weather conditions during the months of the contract work with the weather conditions during similar months of a preceding eight-year period, granted 22 days' extension for each group of buildings. Plaintiff contends that "from the testimony and exhibits, particularly the Government's daily records, the project was delayed by adverse weather conditions for a substantially longer period than granted by the contracting officer"; but, as stated in finding 6(b), the evidence adduced by plaintiff regarding weather delays was vague and fragmentary, and does not establish that it was entitled to an extension of the contract time for a period longer than that allowed by the contracting officer. Banks Constr. Co. v. United States, 364 F.2d 357, 176 Ct.Cl. 1302 (1966).

*Vandalism* (finding 7). Section 26 of the General Conditions provided in part:

### 26. CARE OF WORK

a. The Contractor shall be responsible for all damages to persons or property that occur as a result of his fault or negligence in connection with the prosecution of the work and shall be responsible for the proper care and protection of all materials delivered and work performed until completion and final acceptance, whether or not the same has been covered by partial payments made by the Authority, and whether or not the damage to his work was caused by the Contractor or by other contractors or by others than the employees of the Authority in the course of their employment.

b. In the event of delay in completion of the contract work due to loss or damage caused by failure of the contractor to adopt reasonable and continuous protective methods, the contractor shall not be relieved from payment of liquidated damages because of such delay.

In denying plaintiff's request for an extension of contract time because of delay due to vandalism, the contracting officer emphasized that it was not defendant's responsibility under the contract to protect the project from theft or damage while it was in the hands of the contractor, and that there was no requirement in the contract for an extension because of delay due to vandalism. In reaching this conclusion, it is clear that the contracting officer was in error because the contract provisions which exonerated plaintiff from liquidated damages because of any delays in the completion of the work "due to unforeseeable causes beyond its control and without its fault or negligence," do not depend upon fault or responsibility of defendant. Moreover, when one couples this language with the contract language which provided that the contractor should not be relieved from payment of liquidated damages because of delay caused by failure of the contractor to adopt reasonable and continuous protective methods, the conclusion is inescapable that if the delay was because of the above-described unforeseeable causes and was not caused by failure of the contractor to adopt the protective methods, then the contractor was entitled to be relieved from payment of liquidated damages. The contract is, of course, to be interpreted so as to harmonize all provisions wherever it is reasonable to do so. Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 169 Ct.Cl. 384 (1965); Bishop Engr. Co. v. United States, 180 Ct.Cl. 411 (1967). In preparing its bid, plaintiff anticipated that there would be some vandalism, and during the construction period, plaintiff had two or three watchmen on duty at all times. In addition, plaintiff alerted the Police Department "to keep watch as much as they could." Nevertheless, the evidence is clear and uncontradicted that there was extensive vandalism on the project, including approximately $4,000 to $5,000 in damage to window glass, and that plaintiff was delayed by the vandalism. As set forth in finding 7(d), plaintiff adopted reasonable and continuous protective methods, but was delayed by vandalism which was unforeseeable, beyond its control and without its fault or negligence, to the extent of five days on both group 1 and group 2 buildings.

*Errors in Drawings* (finding 8). The contracting officer denied plaintiff's request for an extension of the contract time because of delay which plaintiff asserted was due to errors in the drawings. As set forth in finding 8(b), the weight of the evidence establishes that there were no serious errors in the drawings, that the corrections to the drawings were handled expeditiously and that the errors in the drawings did not cause plaintiff any significant delay in the overall progress of the work. Connolly-Pacific Co. v. United States, 358 F.2d 995, 175 Ct.Cl. 134 (1966); Commerce International Co. v. United States, 338 F.2d 81, 167 Ct.Cl. 529 (1964).

*Lowering of Sheridan Road* (finding 9). The essential facts were stated by the contracting officer as follows:

18. As to the seventh cause of delay asserted by the Contractor in his letter of February 9, 1961 * * * relating to delay of landscape work because of erection of retaining wall along Sheridan Road in front of Buildings A–2 and B–1, and for which an extension of 10 days is requested * * * I find the facts, as they apply to Group 2, to be as follows:

The lowering of Sheridan Road in front of Group 2 buildings and site necessitated the construction of a retaining wall in front of Buildings A–2 and B–1 but the wall was constructed long after Buildings A–2 and B–1 were accepted. Buildings A–2 and B–1 could have been accepted January 27, 1960 along with Buildings D–5 and B–2 but there was no access to the buildings which could only be entered from the front or Sheridan Road side. When the Highway Department completed Sheridan Road at the point opposite the north end of Building D–5, the Contractor was able to install steps and lead walk which gave access to Buildings A–2 and B–1 at that point, and consequently the Authority accepted them February 8, 1960, 12 calendar days after acceptance of Buildings D–4 and B–2. The Contractor is therefore entitled to 12 days' delay on Buildings A–2 and B–1 and site and landscape work because of Highway Department delays in regrading Sheridan Road. The Highway Department raised the grade at the intersection of Sheridan Road and Pomeroy Road, and in each direction from the corner, which necessitated the rebuilding of a catch basin and construction of curb and gutter and repaving of road at this point to deflect water into the catch basin. The Authority was aware of this problem and that it would require regrading of the site to raise it at that location and removal of paving, raising of grade and repaving a portion of the play area at that location. However, until the District of Columbia completed their work we could not complete the grading and landscaping in this area. Immediately upon completion of the District Highway Department's work the Contractor and grading and landscaping subcontractors proceeded with their respective work, all of which was completed June 16, 1960 and the site and landscaping of Group 2 was accepted subject to completion of site and landscape work, when the retaining wall, to be constructed in front of Buildings A–2 and B–1 should be completed. Therefore, the Contractor is entitled to 94 calendar days' extension on site and landscape work because of delay of the District of Columbia in raising the grade at the intersection of Sheridan and Pomeroy Roads and construction of catch basin and curb therewith and repaving of the intersection.

Based on the foregoing facts is [sic] is my determination as Contracting Officer for the Authority that the Contractor experienced *12 calendar days' delay on Buildings A–2 and B–1* and *106 (94 plus 12) calendar days' delay on site and landscaping* of Group 2 because of unforeseeable causes beyond his control and without his fault or negligence, which delay was not concurrent with other delays for which the Contractor has been given an extension of time. * * *

* * * * * *

20. As to the ninth cause of delay asserted by the Contractor in his letter of February 9, 1961 * * * relating to delay on landscaping of Group 2, and on Buildings A–2, B–1, D–5, and B–2 because of the lowering of Sheridan Road by the District of Columbia Highway Department, and for which an extension of 120 days was request-

ed, I find the facts, as they apply to Group 2, to be as follows:

The delay on site and landscape work on Group 2, and buildings A–2 and B–1, and extension of time therefor, is covered in Item 18 above. The lowering of Sheridan Road and raising of the intersection of Sheridan and Pomeroy Roads had no delaying effect on the completion and acceptance of Buildings D–5 and B–2 for use and occupancy. * * *

Based on the foregoing facts it is my determination as Contracting Officer for the Authority that the Contractor experienced no delays because of the regrading of Sheridan and Pomeroy Roads beyond those covered in Item 18 above and for which extension of contract time has been granted thereon in Item 18 above. Therefore, no further time extension is granted herein under Item 20.

As set forth in finding 9(b), the weight of the evidence does not establish that the lowering of Sheridan Road and the construction of the retaining wall delayed construction of group 2 buildings, including the play areas and parking areas for a period longer than the period of the contract extension allowed by the contracting officer.

*Acceptance of Buildings* (finding 10). In addition to providing that the two groups of buildings were to be "progressively completed, suitable and ready for occupancy" within the prescribed number of days, the contract also contained the following pertinent provisions:

Paragraph 2 of Section 3 of the Special Conditions provided:

2. The Authority may accept any part of the work if there has been such a degree of completion as will, in its opinion, make such part reasonably safe, fit and convenient for the use and accommodation for which it was intended. Dwelling units so accepted by the Authority will not be subject to liquidated damages beyond the date of such acceptance.

Section 32. a. of the General Conditions provided:

## 32. INSPECTION

a. All material and workmanship shall be subject to inspection, examination, or test by the Authority and the Architect at any and all times during manufacture or construction and at any and all places, where such manufacture or construction is carried on. The Authority shall have the right to reject defective material and workmanship or require its correction. Rejected workmanship shall be satisfactorily corrected. Rejected material shall be promptly segregated and removed from the premises and satisfactorily replaced with proper material without charge therefor. If the Contractor fails to proceed at once with the correction of rejected defective material or workmanship, the Authority may by contract or otherwise have the defects remedied or rejected materials removed from the site and charge the cost of the same against any moneys which may be due the Contractor, without prejudice to any other rights or remedies of the Authority.

Section 34 of the General Conditions provided:

## 34. FINAL INSPECTION

a. When the work is substantially completed the Contractor shall notify the Authority in writing that the work will be ready for final inspection on a definite date which shall be stated in such notice. Such notice shall be given at least ten (10) days prior to the date stated for final inspection and the notice shall bear the signed concurrence of the representative of the Authority having charge of inspection.

b. If the Authority determines that the state of preparedness is as represented it will make the arrangements necessary to have final inspection commenced on the date stated in such notice, or as nearly thereafter as is practicable.

Section 48 of the General Conditions provided in part:

## 48. GENERAL GUARANTY

Neither the final certificate of payment nor any provision in the contract nor partial or entire use of occupancy of the premises by the Authority shall constitute an acceptance of work not done in accordance with the contract or relieve the Contractor of liability in respect to any express warranties or responsibility for faulty materials or workmanship.

In response to plaintiff's request for an extension of the contract time due to alleged delays in acceptance of the buildings, the contracting officer stated:

11. As to the tenth cause of delay asserted by the Contractor in his letter of February 9, 1961 * * * relating to alleged delay by the Authority in accepting buildings for use and occupancy, and for which an extension of 30 days was requested, I find the facts, as they apply to Group 1, to be as follows:

The Authority refused on this project, just as it has on all other projects, to accept any buildings for use and occupancy until they were brought to a satisfactory stage of completion and quality of workmanship to comply with the contract. Numerous punch lists were made on these buildings, and checked and rechecked by the project personnel representing the Architect and the Authority until satisfactory completion of contract work and punch list items. The Authority was constantly pushing the Contractor and his personnel to satisfactorily complete the buildings so that they could be taken over. A review of the memoranda of acceptance for occupancy will reveal that buildings were finally taken over subject to completion of miscellaneous work on exterior of buildings and site work and landscaping, and in some cases completion of interior work. If the Contractor's supervisory personnel had been diligent in the satisfactory completion of contract required work and punch list items, the amount of punch listing would have been greatly reduced and the buildings could and would have been taken over sooner than they were. However, they failed to properly check and supervise the mechanics' work, and, therefore, any delay is the Contractor's responsibility.

Based on the foregoing facts it is my determination as Contracting Officer for the Authority that the Contractor experienced no delay on the part of the Authority in accepting buildings for use and occupancy that was not caused by his personnel and, therefore, no time extension is granted.

\* \* \* \* \* \*

21. As to the tenth cause of delay asserted by the Contractor in his letter of February 9, 1961 * * * relating to alleged delay by the Authority in accepting buildings for use and occupancy, and for which an extension of 30 days was requested, I find the facts, as they apply to Group 2, to be as follows:

For the reasons set for in detail in Item 11 above, the Contractor is entitled to no extension for alleged delays in acceptance of buildings for use and occupancy. * * *

Based on the foregoing facts it is my determination as Contracting Officer for the Authority that the Contractor experienced no delay on the part of the Authority in accepting buildings for use and occupancy for any reasons that were beyond his control and that were not caused without his fault or negligence and, therefore, no time extension is granted.

At the trial the evidence established that the buildings were "substantially" completed prior to acceptance by defendant. Plaintiff, apparently relying upon the above-quoted Section 34 of the General Conditions, claims that it should have been allowed an extension of the contract time "as a result of the fail-

ure of the defendant to inspect and accept the dwelling units when substantially completed." A fair reading of Section 34 of the General Conditions and of the above-quoted paragraph 2 of Section 3 of the Special Conditions, however, compels the conclusion that when the work was substantially completed plaintiff was obliged to notify defendant of that fact, but that defendant was not then obliged to accept the buildings. The language of the Special Conditions is obviously permissive and embraces the exercise of discretion by defendant as to whether a building was reasonably safe, fit and convenient for the use and accommodation for which it was intended. Moreover, the buildings were, as previously indicated, to be "completed, suitable and ready for occupancy." As set forth in finding 10(i), the record does not support plaintiff's contention that defendant's inspectors were tardy in making inspections or that the inspections were unnecessary or improper, or that defendant failed to accept the buildings promptly after they were completed and ready for occupancy. Fox Valley Engr. Inc. v. United States, 151 Ct.Cl. 228 (1960).

 *Change Orders* (finding 11). All of the change orders involved here contained a statement that an equitable extension of contract time would be considered separately. At the trial, defendant's official who prepared the findings of fact for the contracting officer, now deceased, testified that in arriving at a conclusion as to the amount of the extension of the contract time of 34 calendar days for group 1 change orders and of 49 calendar days for group 2 change orders, he first devised a formula by dividing the contract dollar amount by the contract days and then applied the formula in reaching the total amount of the extension of the contract time. He further testified that after he reached the conclusion, he conferred with representatives of the Public Housing Authority (which, under the contract, approved extensions of contract time) and that the PHA representatives expressed disagreement with the use of the formula. The PHA representatives then made a determination of the time extension to be allowed on each change order, which added up to the same total days extension for each of the two groups. The evidence does not disclose just how the PHA representatives arrived at their determination.

As set forth in finding 11(e), although at the trial plaintiff attacked the above-described formula, and on each of several change orders adduced evidence to the effect that a certain number of days were required for a subcontractor to complete the work under the change order, it failed to show how the change order affected either group of buildings or the project as a whole so as to justify additional extension of the contract time. Plaintiff, accordingly, failed to establish that it was entitled to additional time extensions because of change orders. See Connolly-Pacific Co. v. United States, *supra.*

## COSTS INCURRED AFTER SUBSTANTIAL COMPLETION

In its petition, plaintiff alleges that defendant breached the contract by failing and refusing to accept the work when it was substantially completed, and that as a result, plaintiff incurred additional costs; but in view of the conclusion heretofore reached that the record does not support plaintiff's contention that defendant failed to accept the buildings promptly after they were completed and ready for occupancy, this claim for additional costs is not sustained. (Finding 12(b).)

In applying the contract formula for liquidated damages and in accordance with the findings of fact on excusable delay, plaintiff is entitled to recover the sum of $4,540.